UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

ARTESHA WILLIAMS,

　　　　Plaintiff,

v.                                          CASE No. 8:11-CV-520-T-TGW

MICHAEL J. ASTRUE,
Commissioner of Social Security,

　　　　Defendant.

_____

## O R D E R

　　　　The plaintiff in this case seeks judicial review of the denial of her claims for Social Security disability benefits and supplemental security income payments.[1] Because the decision of the Commissioner of Social Security is supported by substantial evidence and the plaintiff has not shown any reversible error, the decision will be affirmed.

## I.

　　　　The plaintiff, who was thirty years old at the time of the administrative hearing and who has about a sixth grade education with special

---

[1] The parties have consented in this case to the exercise of jurisdiction by a United States Magistrate Judge (Doc. 15).

education classes, has worked as a fast food worker, hotel housekeeper, kitchen worker, and warehouse worker (Tr. 25, 26-27, 48, 51).[2] She filed claims for Social Security disability benefits and supplemental security income payments, alleging she became disabled due to back pain, right side numbness, mental problems, and severe headaches (Tr. 140). Her claims were denied initially and upon reconsideration.

At her request, the plaintiff then received a de novo hearing before an administrative law judge. The law judge found that the plaintiff had severe impairments of "chronic back and knee pain with a low IQ" (Tr. 13). He concluded that, with these impairments, the plaintiff has "the residual functional capacity to perform light work with an occasional limitation for bending, stooping, crouching and kneeling but capable of performing routine, predictable tasks which require little initiative in an environment with only limited contact with the public" (Tr. 14). The law judge therefore determined that the plaintiff could return to her past work as a housekeeper (Tr. 16).

---

[2]The plaintiff testified that she had only a sixth grade education. However, other reports in the record indicate that the plaintiff may have attended school through seventh or eighth grade. For example, a May 2007 medical evaluation states that the plaintiff "graduated 8th grade but was expelled for behavioral problems" (Tr. 385).

Alternatively, the law judge decided, based upon testimony from the vocational expert, that other jobs exist in significant numbers in the national economy that the plaintiff could perform, such as garment sorter and laundry folder (id.). Accordingly, the law judge ruled that the plaintiff was not disabled (Tr. 17). The Appeals Council let the decision of the law judge stand as the final decision of the Commissioner.

II.

A. In order to be entitled to Social Security disability benefits and supplemental security income, a claimant must be unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which ... has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. 423(d)(1)(A), 1382c(a)(3)(A). A "physical or mental impairment," under the terms of the Social Security Act, is one "that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. 423(d)(3), 1382c(a)(3)(D). The Act provides further that a claimant

is not disabled if she is capable of performing her previous work. 42 U.S.C. 423(d)(2)(A), 1382c(a)(3)(B).

A determination by the Commissioner that a claimant is not disabled must be upheld if it is supported by substantial evidence. 42 U.S.C. 405(g). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971), quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938). Under the substantial evidence test, "findings of fact made by administrative agencies ... may be reversed ... only when the record compels a reversal; the mere fact that the record may support a contrary conclusion is not enough to justify a reversal of the administrative findings." Adefemi v. Ashcroft, 386 F.3d 1022, 1027 (11th Cir. 2004) (en banc), cert. denied, 544 U.S. 1035 (2005).

It is, moreover, the function of the Commissioner, and not the courts, to resolve conflicts in the evidence and to assess the credibility of the witnesses. Grant v. Richardson, 445 F.2d 656 (5th Cir. 1971). Similarly, it is the responsibility of the Commissioner to draw inferences from the evidence, and those inferences are not to be overturned if they are supported by

-4-

substantial evidence.  Celebrezze v. O'Brient, 323 F.2d 989, 990 (5th Cir. 1963).

Therefore, in determining whether the Commissioner's decision is supported by substantial evidence, the court is not to reweigh the evidence, but is limited to determining whether the record as a whole contains sufficient evidence to permit a reasonable mind to conclude that the claimant is not disabled.  However, the court, in its review, must satisfy itself that the proper legal standards were applied and legal requirements were met.  Lamb v. Bowen, 847 F.2d 698, 701 (11th Cir. 1988).

B. The Commissioner's regulations set out what is termed a "sequential" analysis for deciding disability claims.  See 20 C.F.R. 404.1520, 416.920. The initial question is whether the plaintiff is engaged in substantial gainful activity because, if so, the plaintiff will be found not disabled.  20 C.F.R. 404.1520(b), 416.920(b). If not, the next inquiry (step two) is whether a claimant has a severe impairment.  20 C.F.R. 404.1520(c), 416.920(c). An impairment is not severe if it does not significantly limit a claimant's physical or mental abilities to do basic work activities.  20 C.F.R. 404.1521(a),

-5-

416.921(a). If there is not a severe impairment, then a claimant is deemed to be not disabled.  20 C.F.R. 404.1520(c), 416.920(c).

When an impairment is severe, but does not meet, or equal, a listing in Appendix 1 (step three), a further inquiry (step four) is made as to whether the impairment prevents the claimant from doing past relevant work. 20 C.F.R. 404.1520(f), 416.920(f).  If a claimant cannot do such work, an additional determination (step five) is made concerning whether the claimant can perform other work which exists in significant numbers in the national economy.  20 C.F.R. 404.1520(g), 416.920(g).

### III.

The plaintiff attacks the law judge's decision on four grounds. None of these contentions has merit.

A. The plaintiff's primary challenge is to the law judge's conclusion that the plaintiff did not meet, or equal, listing 12.05 B or C of Appendix 1 for mental retardation (Doc. 22, pp. 5-16).  A condition listed in Appendix 1 is considered so severe that a plaintiff who meets, or equals, a listing is deemed disabled without regard to vocational considerations.  20 C.F.R. Part 404, Subpart P, Appendix 1;  Wilkinson o/b/o Wilkinson v.

Bowen, 847 F.2d 660, 662 (11th Cir. 1987). The plaintiff bears the burden of showing that she meets, or equals, a listing. McSwain v. Bowen, 814 F.2d 617, 619 (11th Cir. 1987). Moreover, "when a claimant contends that [s]he has an impairment meeting the listed impairments entitling h[er] to an adjudication of disability under regulation 404.1520(d), [s]he must present specific medical findings that meet the various tests listed under the description of the applicable impairment or, if in the alternative [s]he contends that [s]he has an impairment which is equal to one of the listed impairments, the claimant must present medical evidence which describes how the impairment has such an equivalency." Bell v. Bowen, 796 F.2d 1350, 1353 (11th Cir. 1986); Wilkinson o/b/o Wilkinson v. Bowen, supra, 847 F.2d at 662.

As indicated, the plaintiff contends that she meets listings 12.05 B and C of Appendix 1. Those listings state:

> 12.05 *Mental Retardation*: Mental retardation refers to significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; *i.e.*, the evidence demonstrates or supports onset of the impairment before age 22.

The required level of severity for this disorder is met when the requirements in A, B, C, or D are satisfied.

. . .

B.  A valid verbal, performance, or full scale IQ of 59 or less;

or

C.  A valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function; ....

The law judge expressly found that the plaintiff did not meet, or equal, an Appendix 1 listing (Tr. 14). The plaintiff complains that the law judge did not specifically mention listing 12.05. However, at the hearing, plaintiff's counsel argued that the plaintiff met, or equaled, listing 12.05 (Tr. 55-56; see also Tr. 108-09, 110). In his decision, the law judge specifically considered that argument and rejected it (Tr. 15-16). Thus, the law judge obviously considered listing 12.05 and found that the plaintiff did not meet, or equal, it. Furthermore, the Eleventh Circuit has recently concluded that the law judge is not required to set forth a detailed discussion of that finding.

Kalishek v. Commissioner of Social Security, 2012 WL 1938991 (11th Cir.) (unpub. dec.).

In addition, the law judge's finding that the plaintiff does not meet, or equal, listing 12.05 is supported by substantial evidence. The plaintiff's school records are not available (Tr. 377). Thus, there is no evidence in the record indicating that her IQ scores met the listing criteria during the developmental period.[3]

Moreover, there is no treating doctor, psychiatrist or otherwise, and no treating psychologist, who has opined that the plaintiff meets, or equals, listing 12.05. Consequently, the plaintiff attempts to rely upon the report of psychologist Dr. Gerald Mussenden, who in July 2007 administered the Wechsler Adult Intelligence Scale test (WAIS-III). He reported that the plaintiff had a verbal IQ score of 54, a performance IQ score of 52, and a full scale IQ score of 49 (Tr. 402).[4]   However, after evaluating the plaintiff's

---

[3]The standard definitions of mental retardation provide that it manifests before age 18. See Atkins v. Virginia, 536 U.S. 304, 309 n.3 (2002). However, listing 12.05 permits onset before age 22. See 20 C.F.R. Part 404, Subpart P, App. 1, listing 12.05.

[4]There is a rebuttable presumption that an IQ score stays fairly constant throughout life. Hodges v. Barnhart, 276 F.3d 1265 (11th Cir. 2001). That presumption is questionable here since the plaintiff suffered a head injury in which she lost consciousness for two to

speech and overall thinking, Dr. Mussenden opined that the plaintiff "is more intelligent than these scores suggest and she does have the capacity to function within a borderline range of intelligence" (id.). Nevertheless, Dr. Mussenden also noted the plaintiff's lack of stimulation and deficient educational background, and he reported that the plaintiff "is functioning within a mild range of retardation" (Tr. 402-03).

Dr. Mussenden's opinion is less than clear since he said the plaintiff has the capacity to function with a borderline range of intelligence, but he also said that she is functioning within a mild range of retardation. He further stated that "[t]his evaluation finds that [the plaintiff] is functioning within a mild range of retardation although she innately has some upper level potential, which she barely uses" (Tr. 403). These confusing comments may mean, in terms of listing 12.05, that the plaintiff innately has the capacity to perform outside the range of mental retardation but that she has deficits in adaptive functioning so that she ordinarily functions in that range.

The plaintiff seizes upon Dr. Mussenden's use of the term "mild range of retardation" to argue that the plaintiff meets, or equals, listing 12.05.

---

three minutes (Tr. 299). Nevertheless, the presumption will be applied.

The plaintiff reads more into Dr. Mussenden's report than is there. Dr. Mussenden does not mention listing 12.05 at all.

Moreover, the law judge plainly construed Dr. Mussenden's report differently. Thus, he interpreted the report to say that the plaintiff "is more intelligent than [her IQ] scores suggest and she does have the capacity to function within the borderline range of intelligence" (Tr. 13). The law judge, as indicated, has the authority and responsibility to draw inferences from the evidence. The inference he clearly drew from Dr. Mussenden's report is that the IQ scores were invalid.

This inference is amply supported by substantial evidence. In the first place, it is a reasonable interpretation of the report. Furthermore, two reviewing psychologists opined that the scores were invalid.

Dr. Martha Putney, a reviewing psychologist, stated on a Psychiatric Review Technique form (Tr. 489):

> IQ SCORES DURING CE (40'S-50'S) ARE NOT CREDIBLE. SHE IS ABLE TO DRIVE AND TO MANAGE ROUTINE FINANCIAL TRANSACTIONS, WHICH WOULD NOT BE POSSIBLE WERE SCORES AN ACCURATE REFLECTION OF HER TRUE INTELLECT. CE VENDOR OPINES BIF, BUT EVEN THIS IS

> NOT CONSISTENT WITH HER EDUCATIONAL ATTAINMENT, AS SHE WAS NEVER IN SLD, MUCH LESS EMD PLACEMENT. SHE QUIT WORKING 2/0 PHYSICAL SXs, NOT MENTAL.

Similarly, Dr. Timothy Foster, another reviewing psychologist, opined on a Psychiatric Review Technique form (Tr. 418):

> She was then sent to examining Dr Mussenden who reports current IQ scores were 54 52 49 but Dr did not believe these were valid scores. Cl also has hx of prison time but has hx of work as well. Dr M opined that cl's true IQ was likely borderline range. She lives with her 5 children an she can cook, clean, vacuums, does lauundry. It appears cl was not giving full effort in the formal IQ testing.

Furthermore, the Psychiatric Review Technique form called for the reviewing psychologist to indicate if any of the criteria of listing 12.05 were met. Neither psychologist concluded that the criteria were satisfied (Tr. 410, 481).

In sum, the law judge determined that the IQ scores reported by Dr. Mussenden were not valid. That conclusion is plainly supported by substantial evidence. There certainly is no evidence that compels a finding that the scores were valid. See Adefemi v. Ashcroft, supra.

In addition, the Commissioner persuasively argues that the plaintiff has not shown deficits in adaptive functioning, which is also a requirement of listing 12.05 (Doc. 23, pp. 6-7). In order to meet listing 12.05, the plaintiff has to demonstrate not only that she has a qualifying IQ score, but also that she has "deficits in adaptive functioning initially manifested during the developmental period." Accordingly, in Crayton v. Callahan, 120 F.3d 1217, 1219 (11th Cir. 1997) (emphasis added), the court said that, "[t]o be considered for disability benefits under section 12.05, a claimant must at least (1) have significantly subaverage general intellectual functioning; (2) have deficits in adaptive behavior; and (3) have manifested deficits in adaptive behavior before age 22."

As the law judge stated, the plaintiff "likes to read magazines, she is able to interact with 5 children and, by inference, she was able to work a[t] Wendy's and follow a schedule. Her testimony would indicate that she has a low IQ but capable of knowing what was going on and respond to all questions in a reasonable fashion" (Tr. 16). The Commissioner points out that the plaintiff has worked not only at Wendy's, but also as a hotel housekeeper and warehouse worker (Tr. 48). In addition, the plaintiff

-13-

reported to Dr. Mussenden that she cooks, cleans, does laundry, and uses the telephone (Tr. 403). Further, Dr. Raj Eliazer, the plaintiff's neurologist, repeatedly noted that the plaintiff "is alert, awake, and oriented to person, place, and time with no language deficit. She has intact fluency, comprehension, naming, and repetition" (Tr. 431, 436, 494). Tampa General Hospital records from June 2008, also state that the plaintiff was alert and oriented (Tr. 603, 613). The Commissioner also noted that the plaintiff was able to obtain a driver's license, although she said at the hearing she does not drive due to a physical problem (Doc. 23, p. 7). However, the record shows that she drove to a doctor's appointment in 2007 (Tr. 385).

The evidence therefore does not establish that the plaintiff had deficits in adaptive functioning before age 22. Consequently, this is an additional reason why the law judge did not err in finding that the plaintiff does not meet, or equal, listing 12.05.

The law judge's finding is further supported by records prepared in 2002 during the plaintiff's incarceration for aggravated assault on a law enforcement officer. During her prison stay, the plaintiff had a psychological evaluation that was overseen by a psychiatrist and a psychologist. That

evaluation stated, "Mental Retarded: No" and "Mildly Impaired Adaptive Functioning: No" (Tr. 311). Furthermore, she was diagnosed with a Global Assessment of Functioning (GAF) score of 65 (Tr. 300). The GAF scale "[c]onsider[s] psychological, social, and occupational functioning on a hypothetical continuum of mental health-illness." Diagnostic and Statistical Manual of Mental Disorders, (DSM-IV-TR) (4th ed., Text Revision), p. 34. A rating of 61-70 indicates "[s]ome mild symptoms ... OR some difficulty in social, occupational, or school functioning ..., but generally functioning pretty well, has some meaningful interpersonal relationships" (id.). A GAF score of 65 in 2002 is inconsistent with a contention that the plaintiff had deficits in adaptive functioning that manifested before age 22.

B. As a second contention, the plaintiff argues that the law judge "erred by ignoring plaintiff's medically documented impairments of carpal tunnel syndrome and headaches" (Doc. 22, pp. 16-17). This contention as asserted – the law judge "ignored" the complaints of carpel tunnel syndrome and headaches – is baseless. The law judge considered both conditions, but did not find that they rose to the level of a severe impairment.

The law judge, in deciding at step two which impairments were severe and which were not, noted a neurological examination in which the doctor "mentioned bilateral carpal tunnel syndrome but a nerve study in August 2007, showed only 'mild' carpal tunnel" (Tr. 13). Plainly, the law judge implicitly concluded that the carpal tunnel problem was a nonsevere impairment.

Importantly, in order to show reversible error, the plaintiff must show that she had functional limitations from the condition that were not included in the law judge's determination of the plaintiff's residual functional capacity. In this respect, "a diagnosis or a mere showing of 'a deviation from purely medical standards of bodily perfection or normality' is insufficient; instead, the claimant must show the effect of the impairment on her ability to work." Wind v. Barnhart, 133 Fed. Appx. 684, 690 (11th Cir. 2005) (quoting McCruter v. Bowen, 791 F.2d 1544, 1547 (11th Cir. 1986)). In other words, it is the functional limitations that determine disability. Moore v. Barnhart, 405 F.3d 1208, 1213 n. 6 (11th Cir. 2005); McCruter v. Bowen, supra. Here, the plaintiff makes no effort to show how her carpal tunnel syndrome creates

a specific functional limitation beyond the law judge's residual functional capacity finding.

The law judge, furthermore, expressly considered the plaintiff's testimony that she suffered from headaches (Tr. 15). However, the law judge found that her testimony was not credible to the extent it was inconsistent with the residual functional capacity that had been determined (id.). Specifically, the law judge stated (id.):

> After careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairment could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment. Furthermore, after considering the evidence of record, the undersigned finds that neither the objective medical findings nor any other corroborating evidence supports the claimant's allegations as to the intensity, duration, and limiting effects of these symptoms. The record includes evidence that suggests the claimant has exaggerated symptoms and limitations. Her testimony is directly contradicted by her treating physician's notes.

The plaintiff has not challenged the law judge's credibility determination. The scheduling Order required the plaintiff to "identify with particularity the discrete grounds upon which the administrative decision is being challenged" and to support any such challenge "by citations to the record of the pertinent facts and by citations of the governing legal standards" (Doc. 14, p. 2). These requirements were not satisfied with respect to an attack on the credibility finding. Consequently, any such attack is deemed abandoned.

The only contention that the plaintiff raised on this issue was that the law judge ignored the plaintiff's complaints of carpal tunnel syndrome and headaches. This contention is unavailing since the law judge considered those conditions and concluded that they did not create any significant functional limitations.

C. The plaintiff next asserts that the law judge's residual functional capacity assessment is deficient (Doc. 22, pp. 18-22). In particular, the plaintiff contends that the residual functional capacity "does not contain a function-by-function assessment of plaintiff's mental abilities nor an

assessment of the consultative examiner's mental limitations" (id., p. 18). This argument is unpersuasive.

As an initial matter, the Commissioner properly notes that the plaintiff failed to develop her argument concerning the function-by-function assessment (Doc. 23, p. 14). As indicated, under the scheduling Order, the plaintiff was required to support any challenge "by citations to the record of the pertinent facts and by citations of the governing legal standards" (Doc. 14, p. 2). The plaintiff's one-paragraph mention of the facts purportedly bearing on this issue (Doc. 22, p. 22) does not satisfy these requirements. Accordingly, the complaint about a lack of function-by-function assessment is deemed waived.

The plaintiff's one-paragraph argument complains that the law judge failed to "address all of Dr. [Mussenden's] findings on mental status examination" (id.). However, there is no rigid requirement that the ALJ specifically refer to every piece of evidence in his decision. See Dyer v. Barnhart, 395 F.3d 1206, 1211 (11th Cir. 2005). And there certainly is no requirement that the law judge quote in his decision everything Dr. Mussenden had to say about the plaintiff.

-19-

Moreover, as the discussion concerning the first issue shows, the law judge clearly considered the Dr. Mussenden's evaluation (Tr. 13, 15). Having assessed the evidence bearing on the plaintiff's mental status, the law judge found that she has a severe impairment of a low IQ. Consequently, the law judge limited the plaintiff to "routine, predictable tasks which require little initiative in an environment with only limited contact with the public" (Tr. 14). The plaintiff's cursory argument makes no attempt to show that the plaintiff had greater functional limitations from mental impairments (see Doc. 22, p. 22).

D. Finally, the plaintiff argues that the law judge erred by not addressing the mental demands of her past relevant work (id., pp. 22-25). This argument is without merit.

The plaintiff has the burden at step four of the sequential analysis to show that she cannot return to prior work. Doughty v. Apfel, 245 F.3d 1274, 1278 (11th Cir. 2001). An ability to return to work exists either if the plaintiff can do the job as she actually performed it, or if she can perform the job as it is done in the national economy. See Jones v. Apfel, 190 F.3d 1224, (11th Cir. 1999); Jackson v. Bowen, 801 F.2d 1291, 1293 (11th Cir. 1986). In

this case, the law judge concluded that the plaintiff could perform the past job of housekeeper as it is "actually and generally performed" (Tr. 16).

The plaintiff argues that the law judge did not adequately discuss the mental demands of the position of housekeeper. In particular, the plaintiff contends that the law judge erred "by not obtaining [or] providing adequate information about those work demands that have a bearing on the medically established impairments, namely Plaintiff's 'low IQ'" (Doc. 22, p. 24). However, at the hearing, the law judge asked the vocational expert whether a person with the same age, education, and experience as the plaintiff would be able to perform the plaintiff's past work with essentially the same mental and physical restrictions as the law judge included in the plaintiff's residual functional capacity (Tr. 48-49). The expert testified in response that such an individual would be able to perform the jobs of housekeeper, garment sorter, and laundry folder (Tr. 49). This testimony provides substantial evidence to support the law judge's finding that the plaintiff could perform her past relevant work as a housekeeper or, in the alternative, other work that exists in significant numbers in the national economy.

The plaintiff also contends that the finding that she could return to past work or other work is flawed because the law judge did not consider limitations caused by her carpal tunnel syndrome and headaches (Doc. 22, p. 24). However, in light of the conclusion that these were not severe impairments, this argument is meritless. Thus, the law judge is not required to include in the hypothetical question allegations that have been properly rejected. Crawford v. Commissioner of Social Security, 363 F.3d 1155, 1161 (11th Cir. 2004).

It is, therefore, upon consideration

ORDERED:

That the decision of the Commissioner is hereby AFFIRMED. The Clerk shall enter judgment in accordance with this Order and CLOSE the case.

DONE and ORDERED at Tampa, Florida, this _11_ day of July, 2012.

THOMAS G. WILSON
UNITED STATES MAGISTRATE JUDGE